DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, which found appellee eligible to participate in the Ohio Workers' Compensation Fund for the condition of "major depressive disorder with associated multiple narcotic dependency in the form of medication." For all of the reasons set forth below, this court affirms the judgment of the trial court. *Page 2 
 {¶ 2} Appellant, Con-Way Transportation Services Inc., sets forth the following five assignments of error:
 {¶ 3} "I. The trial court abused its discretion by allowing the opinion testimony of Robert A. MacGuffie, PhD., who was not qualified under Evid.R. 702 to provide an opinion on the ultimate trial issue.
 {¶ 4} "II. The trial court abused its discretion by allowing the opinion testimony of Robert A. MacGuffie, PhD., whose opinion was based, in part, on the medical opinion of a doctor who did not testify at trial.
 {¶ 5} "III. The trial court abused its discretion in admitting the September, 2001 hospital records of the St. Charles Mercy Hospital without redacting the portions of the records containing medical diagnoses relevance to the ultimate trial issue.
 {¶ 6} "IV. The trial court abused its discretion in admitting the unauthenticated records of Lurley Archambeau, M.D., which records constituted inadmissible hearsay under Evid.R. 803.
 {¶ 7} "V. The trial court abused its discretion in instructing the jury on dual causation where there was no evidence showing more than one proximate cause for the alleged psychiatric condition at issue."
 {¶ 8} The following undisputed facts are relevant to the issues raised on appeal. This case stems from a disputed workers' compensation claim. On December 7, 1998, appellee was employed as a truck driver with appellant. On December 7, 1998, appellee sustained an injury while performing the task of pulling dock plates. *Page 3 
 {¶ 9} Appellee was subsequently referred to a neurosurgeon at St. Vincent Mercy Medical Center. On February 3, 1999, appellee underwent cervical disc surgery for disk herniation and spurring. Appellee returned to work on light duty three weeks after this surgery. Appellee resumed truck driving duties following three weeks on light duty.
 {¶ 10} Shortly after resuming normal duties, appellee continued to experience physical problems and was unable to work. Appellee filed a workers' compensation claim. Appellee's claim was allowed for conditions including cervical strain, herniated cervical disc, adjustment disorder with mixed anxiety and depressed mood, and acute psychosis secondary to steroid injection.
 {¶ 11} In the wake of being unable to resume normal duties, appellee sought treatment from a local psychologist. In addition, appellee began treatment at several area pain clinics, including St. Vincent and St. Charles. The course of treatment involved heat massage, epidural shots, steroid shots, ultrasound, and being prescribed a multitude of pain medications. Appellee was prescribed Celebrex, Skelaxin, Vicodin, and OxyContin.
 {¶ 12} In April 2001, appellee was admitted to St. Charles for several days to treat a psychosis condition. In response, appellee's pain management physician discontinued the steroid injections and simultaneously increased the dosage of OxyContin. In September 2001, appellee consumed a significant quantity of OxyContin. Appellee was taken to the emergency room at St. Charles and admitted to the psychiatric ward. Following this episode, appellee's psychologist referred him to a psychiatrist for *Page 4 
additional mental health treatment. The psychiatrist placed appellee on Zoloft. Appellee continues to treat with Zoloft.
 {¶ 13} On March 10, 2003, appellee filed a motion to supplement his prior workers' compensation claim with the additional condition of "major depressive disorder with associated multiple narcotic pendency in the form of medication." On June 4, 2003, appellee's motion was granted by the preliminary level district hearing officer. On November 24, 2003, appellee's motion was similarly allowed by the secondary level staff hearing officer. The Industrial Commission refused appellant's appeal of the staff hearing officer's decision.
 {¶ 14} Appellant ultimately appealed to the Wood County Court of Common Pleas pursuant to R.C. 4123.512. On December 6, 2006, the case went to jury trial. The paramount disputed issue was whether appellee's most recent diagnosis should be approved for workers' compensation purposes.
 {¶ 15} Following trial, the jury ruled in favor of appellee and affirmed the decision to allow him to participate in a workers' compensation fund for "major depressive disorder with associated multiple narcotic dependency in the form of medication." This disputed workers' compensation claim and judgment is the core of this appeal. On January 4, 2007, appellant filed a timely notice of appeal.
 {¶ 16} In its first assignment of error, appellant asserts that the trial court abused its discretion in permitting the testimony of appellee's psychologist. In support, appellant argues that appellee's treating psychologist was not qualified to testify pursuant to the *Page 5 
parameters of Evid.R. 702. The subject of whether the psychologist should be authorized by the court as an expert witness was zealously debated by the parties in a motion in limine.
 {¶ 17} In conjunction with the first assignment of error, and substantively merged with it, appellant's second assignment of error asserts that allowing the psychologist's testimony was an abuse of discretion as portions of the testimony consisted of the witness concurring with the diagnosis of appellee's treating psychiatrist who did not himself testify. Given that our judgment on the first assignment inevitably entails consideration of the second assignment, we will consider these assignments together.
 {¶ 18} In support of these assignments, appellant relied heavily upon the notion that because the disputed witness was a PhD psychologist rather than an M.D. psychiatrist, and could not prescribe the actual medication recommended for appellant's condition, he was unfit to testify regarding the diagnosis of the condition.
 {¶ 19} Conversely, appellee asserted that it is standard practice for psychologists to treat patients whose condition may necessitate simultaneous treatment by a psychiatrist for medication purposes. Appellee further argued that there was no authority for the proposition that psychologists are systematically unqualified to testify regarding a diagnosis rendered by a psychiatrist simultaneously treating the same patient.
 {¶ 20} The core of this debate revolved around the fact that the psychiatrist, whom appellee was referred to by his psychologist, made the actual diagnosis. The psychologist concurred with the diagnosis and testified to his concurrence, but was not the mental *Page 6 
health professional who initially tendered it. Given this scenario, appellant argued that the psychologist was not qualified to testify regarding the diagnosis despite simultaneously treating appellee for previously diagnosed depressive disorders.
 {¶ 21} Appellee maintained that the psychologist was not rendered unqualified to testify simply because he concurred with the diagnosis rather than issued it. The trial court denied the motion in limine and permitted the psychologist to testify.
 {¶ 22} It is well established that determining whether an individual qualifies as an expert rests within trial court discretion. Such determinations will not be reversed absent an abuse of discretion.Porter v. Sidor, 8th Dist. No. 84756, 2005-Ohio-776, citing State v.Williams (1983), 4 Ohio St.3d 53, 58. An abuse of discretion connotes more than a mere error of law or judgment; it demands a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} In view of the abuse of discretion standard of review applicable to this issue, we must examine the transcript to ascertain whether the psychologist fit within the parameters required for expert testimony established by Evid.R. 702(B). Evid.R. 702 establishes that a witness may testify as an expert if all of the following apply "(A) The witness' testimony either relates to matters beyond the knowledge or experience professed by laypersons or dispels a misconception common among laypersons; (B) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or *Page 7 
education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 24} We have carefully reviewed and considered the testimony of appellee's psychologist to ascertain whether it comports with Evid.R. 702. Appellee was initially referred to the psychologist for evaluation and treatment connected to how his conditions related to his underlying 1998 workplace injury. The psychologist diagnosed appellee with adjustment disorder, mixed anxiety and depressed mood. He began treating appellee on a regular basis.
 {¶ 25} Following appellee's September 2001 overdose of OxyContin and hospitalization in the psychiatric ward at St. Charles Hospital, he was diagnosed by his treating psychiatrist with major depressive disorder with associated multiple narcotic dependency in the form of medication.
 {¶ 26} Based upon his professional knowledge and experience, history of treatment of appellee, and review of the hospital records connected to the September 2001 hospitalization, appellee's psychologist concurred with that additional diagnosis and continued treating appellee in collaboration with the psychiatrist. The record shows that the psychologist's testimony related to matters beyond the common experience of laypersons and was based upon reliable information. The disputed expert testimony complied with Evid.R. 702(A) and (C).
 {¶ 27} Appellee's psychologist testified that he possesses a PhD in counseling psychology from the University of Utah. He is a licensed psychologist with the state of *Page 8 
Ohio. He served as the director of rehabilitation counseling at Bowling Green State University. He served as a psychologist at Sauder's Woodworking. He served as a psychologist for the Lucas County Drug Abuse SASI program. He evaluated, diagnosed and treated mental health conditions suffered by appellee. The disputed expert testimony complied with Evid.R. 702(B).
 {¶ 28} The record does not establish that the trial court's decision to allow the expert testimony of appellee's psychologist was arbitrary, unreasonable or unconscionable. Appellant's first two assignments of error are found not well-taken.
 {¶ 29} In its third assignment of error, appellant claims that the trial court abused its discretion in admitting the hospital records generated by appellee's September 2001 psychiatric hospitalization at St. Charles following his OxyContin overdose. Although appellant concedes the disputed medical records are self-authenticating pursuant to Evid.R. 902 and R.C. 2317.422, it contends that the diagnostic portions of the records should have been redacted because the physician who tendered that psychiatric diagnosis did not testify.
 {¶ 30} Evid.R. 803(6) establishes as an exception to the hearsay rule, "A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." *Page 9 
 {¶ 31} The staff note to Evid.R. 803(6) states, "The Ohio rule departs from the Federal Evidence Rule by deleting opinions and diagnoses as admissible under this section. It is not clear how far the present Ohio law permits such evidence to be admitted." Accordingly, decisions on the admissibility of such records must be done on a case by case basis.
 {¶ 32} When this dispute arose during trial, appellant argued that those portions of the records referencing medical diagnoses be redacted. Appellant cited the Hytha case in support of his argument to redact the diagnoses. In Hytha v. Schwendeman (197 4), 40 Ohio App.2d 478, the court held that "a medical diagnosis, made by a qualified physician and contained in an otherwise duly authenticated record, is permissible if that statement falls within the general principle of the law of evidence, where such a diagnosis would be admissible if testified to in open court by the person who made the record." Hytha at 483. TheHytha court further concluded that such records, in order to constitute business records admissible to prove the truth of the matter asserted, must be that of the physician making the diagnosis and have been made in the regular course of business. Id. at 486. There is no dispute on this issue.
 {¶ 33} We have carefully reviewed the contested medical records. These records establish that on September 16, 2001, paramedics delivered appellee to the St. Charles Hospital emergency room for nausea and vomiting. It was discovered that appellee had overdosed on prescribed OxyContin. Appellee denied that the overdose was intentional. *Page 10 
Nevertheless, appellee was unable to explain why he ingested an overdose of the narcotics.
 {¶ 34} Appellee was referred for a psychiatric evaluation to Dr. Shahid. The records show that Dr. Shahid thoroughly examined and interviewed appellee. Based upon the examination, interview, psychiatric evaluation and in-patient treatment, diagnoses were made. There is absolutely nothing in the record to suggest that the disputed records at St. Charles are somehow unreliable.
 {¶ 35} In Smith v. Dillard's Dept. Stores, Inc. (Dec. 14, 2000), 8th Dist. No. 75787, the court carefully scrutinized this type of evidentiary dispute. The court determined that Evid.R. 803(6) does not render an otherwise qualified medical report inadmissible merely because it contains hearsay diagnoses. The Dillard's decision emphasized that the primary determinative consideration is whether the diagnosis was contained in a hospital record which would contain such information in the regular course of business. We are satisfied that the disputed records of St. Charles Hospital clearly constitute such records. There is nothing in the record from which we could construe the decision of the trial court to admit these records in an un-redacted form as unreasonable, arbitrary or unconscionable. Appellant's third assignment of error is found not well-taken.
 {¶ 36} In its fourth assignment of error, appellant asserts the trial court abused its discretion in admitting the records of Dr. Archambeau. Our review of the portion of the record relevant to this assignment convinces us to address it briefly and concisely. The *Page 11 
record reveals that the parties engaged in thorough and precise discussions and negotiations on the record regarding which portions of Dr. Archambeau's records would be admitted. Pursuant to these discussions, various contested portions of the records were redacted. It is illuminating to note that appellant's own expert witness utilized and relied upon the disputed records in formulating his expert opinion.
 {¶ 37} The record clearly reflects that the redacted portions of Dr. Archambeau's records admitted into the evidence were the culmination of a collaborative agreement between the parties. The record shows that both counsel for appellee and the trial court went to great lengths to mollify the multitude of concerns raised by appellant regarding the content of these medical records. To characterize the trial court's cooperation in a negotiated evidentiary agreement between the parties as to the extent of the records coming into evidence as unreasonable, arbitrary or unconscionable is not persuasive. Appellant's fourth assignment of error is not well-taken.
 {¶ 38} In its fifth assignment of error, appellant argues the trial court abused its discretion in furnishing the jury with an instruction on dual causation. Absent an abuse of discretion, we must affirm the trial court's jury instruction language. Chambers v. Admr., Ohio Bur. OfWorkers' Comp., 164 Ohio App.3d 397, 2005-Ohio-6086. We may not substitute our judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 39} We note that the record contains ample information to suggest that appellant's condition of "major depressive disorder with associated multiple narcotic *Page 12 
dependency in the form of medication" could have resulted from more than one cause. During its cross-examination of appellee, appellant aggressively delved into multiple causation testimony. Although it may be strategically sound to contest a jury instruction on dual causation at the conclusion of the proceedings, the record of the proceedings contain no evidence to suggest such a jury instruction was arbitrary, unreasonable or unconscionable. On the contrary, such an instruction comported with the record of evidence. Appellant's fifth assignment of error is not well-taken.
 {¶ 40} On consideration whereof, we find that substantial justice was done the party complaining. The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski P.J., Arlene Singer, J., Thomas J. Osowik, J., concur. *Page 1