CHAMBERS, Appellant,

v.

ADMR., BUREAU OF WORKERS' COMPENSATION, et al., Appellees.

[Cite as *Chambers v. Admr., Ohio Bur. of Workers'
Comp.*, 164 Ohio App.3d 397, 2005-Ohio-6086.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22538.

Decided Nov. 16, 2005.

398

Thomas W. Bevan and Christopher J. Stefancik, for appellant.

Carl Patrick, for appellee Montrose Ford.

Jim Petro, Ohio Attorney General, and Eugene B. Meador, Assistant Attorney General, for appellee Administrator, Bureau of Workers' Compensation.

---

MOORE, Judge.

{¶ 1} Appellant, Roslyn Chambers, appeals from the judgment of the Summit County Court of Common Pleas, which found that she was not entitled to participate in the Workers' Compensation Fund. This court affirms.

I

{¶ 2} Appellant filed suit below seeking to participate in the Workers' Compensation Fund as the widow of Richard Chambers. Richard Chambers worked for appellee Montrose Ford up until the time of his death. On October 30, 1998, Chambers, while at work, was engaged in an argument with a co-worker, his cousin, John Harris. Tragically, during the argument, Harris went to his vehicle, retrieved a shotgun, returned, and fatally wounded Chambers.

{¶ 3} The workers' compensation claim was tried to a jury, and the jury found against appellant. The jury concluded that Chambers had acted as an instigator during the assault and thus was precluded from participating in the fund. Appellant's motion for judgment notwithstanding the verdict was denied, and appellant timely appealed the jury's verdict, raising four assignments of error for review. To facilitate our analysis, we have rearranged appellant's assignments of error.

## II

### *ASSIGNMENT OF ERROR II*

■ The trial court erred in providing jury instructions which incorrectly defined the term "instigator."

{¶ 4} In her second assignment of error, appellant argues that the trial court improperly defined "instigator" in the jury charge. We disagree.

■ {¶ 5} A trial court must charge a jury with instructions that are a correct and complete statement of the law. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583. However, the precise language of a jury instruction is within the discretion of the trial court. *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. No. 22387, 2005-Ohio-5103, 2005 WL 2373916; *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 690, 591 N.E.2d 762. In reviewing jury instructions on appeal, this court has previously stated:

[A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party.

(Citations omitted.) *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500.

■ {¶ 6} Additionally, a trial court has no obligation to give jury instructions in the language proposed by the parties, even if the proposed instruction is an accurate statement of the law. *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 638, 651 N.E.2d 489. "Instead, the court has the discretion to use its own language to communicate the same legal principles." Id. Thus, absent an abuse of discretion, this court must affirm the trial court's language of the jury instructions. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d

217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 7} The trial court provided the following jury instruction regarding the term "instigator:"

> Montrose Ford claims Richard Chambers was the instigator of the conflict. The term "instigated" does not mean merely whether Richard Chambers started the quarrel that led to the assault. In order to find that Richard Chambers instigated the assault, you must determine that Richard Chambers used words or actions that would have a tendency to provoke or incite the shooting. An instigator goads or urges on another.

Appellant asserts that the final sentence in this instruction "destroys the legal accuracy of the instruction."

{¶ 8} Appellant urges that the holding in *Indus. Comm. v. Pora* (1919), 100 Ohio St. 218, 125 N.E. 662, compels a finding that the trial court's instruction was erroneous. Specifically, appellant relies upon the court's reasoning, which provides:

> It is not claimed that Pora used any force or violence or made any threats of violence, nor did he use language which would have a tendency to provoke an assault, and we are therefore bound to conclude that nothing was said or done by Pora to incite any assault, much less the deadly one that ensued.

Id. at 220, 125 N.E. 662. *Pora* is the seminal case in Ohio regarding compensation for workplace assaults. Based upon the rationale utilized by *Pora*, however, we cannot say that the trial court abused its discretion in defining "instigate" as noted above.

{¶ 9} Ohio Jury Instructions does not provide a definition of "instigate" or "instigator." Further, our review of Ohio case law does not reveal any court that has provided a comprehensive definition of "instigate." Accordingly, we turn to R.C. 1.42, which provides, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."

{¶ 10} "Instigate" is defined as "[t]o goad or incite (someone) to take some action or course." Black's Law Dictionary (7th Ed.1999) 800. *Pora*, cited as authority by appellant, used the terminology "language which would have a tendency to provoke an assault." *Pora*, 100 Ohio St. at 220, 125 N.E. 662. Provoke is defined as "to incite to anger." Webster's New Collegiate Dictionary (1980) 921. Similarly, "urge" is defined as to "stimulate" or "provoke." Id. at 1278. Finally, "goad" is defined as "to incite or rouse[.]" Id. at 488. We cannot say that the trial court abused its discretion by substituting synonyms for the word "provoke." As noted above, the trial court has broad discretion in choosing

the language of its charge to the jury. Accordingly, the trial court's choice of using terminology that has substantially the same meaning as the definition approved in *Pora* cannot be said to be an abuse of discretion.

{¶ 11} Appellant has urged that this court must liberally construe *Pora* to include a test for reasonableness. Appellant asserts that even if Chambers's conduct falls within the broad definition of *Pora,* Harris's response was so unreasonable that the injury must be found compensable. Appellant argues that a holding to the contrary fails to fulfill the purpose and spirit of workers' compensation. We disagree.

{¶ 12} *Pora* does not speak in terms of reasonableness or justification. While it has not been revisited or refined in nearly a century, the language of *Pora* is clear and unambiguous. Inserting appellant's "reasonableness" standard would abrogate much of the holding in *Pora,* i.e., an unreasonable response is inherent in a workplace assault that results in a criminal conviction. As such, under appellant's proposed standard, nearly every injury arising from a workplace assault would be compensable. Such a result is not supported by *Pora.*

{¶ 13} *Pora* speaks only of language that would tend to provoke "*an* assault." (Emphasis added.) *Pora,* 100 Ohio St. at 220, 125 N.E. 662. There is no authority for this court to graft a reasonableness standard onto the test set forth in *Pora.* Accordingly, the jury was properly instructed on "instigation." Appellant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

■ The trial court erred when it instructed the jury to determine whether Richard Chambers was the "instigator" of the assault which resulted in his death.

{¶ 14} In her first assignment of error, appellant contends that the trial court erred when it permitted the jury to determine whether or not Chambers had instigated the assault. We disagree.

■ {¶ 15} In reviewing whether sufficient evidence was presented to warrant submitting an issue to a jury, this court must determine whether the record contains evidence from which reasonable minds could reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828.

[I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue. Conversely, it is also the duty of a trial court to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit

reasonable minds to reach different conclusions on that issue. In other words, if all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party. Naturally, if the finding on that one issue disposes of the whole case, a duty arises to grant judgment upon the whole case.

(Citations omitted and emphasis added.) *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 280 N.E.2d 896. In the instant matter, appellees sought and received the jury instruction, supra, regarding whether Chambers was an instigator. Accordingly, we proceed to review whether reasonable minds could have come to different conclusions on that issue.

{¶ 16} The evidence presented included the following. Chambers and Harris were cousins and worked together at Montrose Ford. Chambers was a superior of Harris's in the detail and car-wash department at Montrose. In fact, Chambers was central in Montrose's decision to hire Harris.

{¶ 17} Harris testified, via videotaped deposition, however, that he had felt that Chambers constantly belittled him about how he handled his job duties. Harris continued his testimony as follows. On the day of the incident, October 30, 1998, Harris overheard a conversation between Chambers and another employee and believed that Chambers was mocking him. Harris believed that Chambers had made the noise of a cuckoo clock in his direction.

{¶ 18} Harris then left the work area, went to his vehicle, and retrieved a shotgun. Harris returned with the weapon and confronted Chambers. The argument resumed and Chambers stated something substantially similar to "If you are going to shoot me, go ahead and shoot me. It must be my time to go." At that time, Butch McMillan, the head of the detail department, intervened and escorted Harris outside the building. McMillan felt then that he had calmed Harris and that the danger had subsided. However, at that time, Chambers stated loudly enough for Harris to hear, "He ain't f**king coming back in here," to which Harris responded, "Oh, yeah?" Harris then reentered the garage and shot and killed Chambers. With regard to those final statements, the following questioning took place during Harris's deposition.

Q. Now, if [Richard] hadn't made those comments to you, did you intend to leave the premises and not have anything else happen?

A. Yes, sir.

Harris's statements are supported by Chris Alberson, a co-worker, who testified as follows:

Q. Had—did you believe that Mr.—at the time you were there, did you believe at that time that Mr. McMillan had basically defused the situation?

A. Yes, I do. Because—because it—he was outside and they were—and they were half way to his car.

{¶ 19} There is no question that the events of October 30, 1998, were tragic and that appellant has suffered a tremendous loss. Based upon the evidence presented, however, this court finds that a reasonable jury could reach different conclusions on the issue of whether Chambers instigated the assault. Accordingly, the trial court properly submitted the matter to the jury. *Murphy*, 61 Ohio St.3d at 591, 575 N.E.2d 828. Appellant's first assignment of error is overruled.

### *ASSIGNMENT OF ERROR III*

■ The trial court erred [ ] in providing imprecise jury instructions and interrogatories that directed the jury to [ ] findings that were inconsistent and devoid of evidentiary support.

{¶ 20} In her third assignment of error, appellant asserts that the trial court erred when it permitted the jury to answer interrogatories in an inconsistent fashion. We disagree.

■ {¶ 21} The trial court has the discretion and a duty under Civ.R. 49(B) to review the jury interrogatories to determine whether they were inconsistent with the jury's general verdict. *Bicudo v. Lexford Properties Inc.*, 157 Ohio App.3d 509, 2004-Ohio-3202, 812 N.E.2d 315, at ¶ 51. Accordingly, this court will not reverse the trial court's decision regarding whether to set aside the verdict absent an abuse of discretion. Id. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140. Further, "[i]f it is reasonably possible so to do, special findings of a jury must be harmonized with its general verdict." *Klever v. Reid Bros. Express, Inc.* (1949), 151 Ohio St. 467, 474, 39 O.O. 280, 86 N.E.2d 608.

{¶ 22} The following interrogatories and answers resulted from the trial:

1. Was there a causal connection between the shooting and the work?

A. Yes.

2. When John Harris left the car wash with Darryl "Butch" McMillan, did this break the causal relation between the employment and the injury?

A. No.

3. Were the events after they left a continuation of the work related conflict?

A. Yes.

4. Were the events after the two men left the car wash, a separate work related conflict?

A. No.

5. If the answer of six or more juror to Interrogatory No. 3 or No. 4 is "Yes," was Richard Chambers the instigator of this conflict?

A. Yes.

Appellant asserts that the jury's answers to these interrogatories are inconsistent. We disagree.

{¶ 23} Based upon the above answers, the jury found that on the day of the assault, only one continuing conflict occurred. The jury therefore must have concluded that McMillan's efforts to remove Harris from the garage had not defused the situation in its entirety. Such a finding is supported by the evidence, which demonstrated that Chambers's comments were made in close temporal proximity to McMillan's intervention—i.e., Chambers's comments were made within minutes of McMillan's removing Harris from the garage and served to continue the argument between Chambers and Harris. Based upon the events of the entire argument on October 30, 1998, the jury found that Chambers had instigated the assault. As a result, a verdict was returned that found that appellant was not entitled to participate in the fund. As the jury's answers to the interrogatories coincide with its general verdict, no inconsistencies exist.

{¶ 24} Within this assignment of error, appellant maintains that the jury's response to interrogatory number five was against the manifest weight of the evidence. However, as noted above, the evidence at trial was uncontested. Appellant's challenge is identical to the challenge raised in her first assignment of error—i.e., a legal challenge to the trial court's determination to allow the matter to proceed to the jury on the issue of "instigation." Accordingly, appellant's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

The trial court erred in denying [appellant's] motion for directed verdict and subsequently [appellant's] motion for judgment notwithstanding the verdict or new trial.

{¶ 25} In her final assignment of error, appellant argues that the trial court erred when it failed to grant her motion for directed verdict and her later motion for judgment notwithstanding the verdict.[1] This court disagrees.

---

1. While appellant's assignment of error discusses a motion for a new trial, she has made no argument regarding the trial court's denial of that motion. See App.R. 16(A)(7).

{¶ 26} Civ.R. 50(A) authorizes the trial court to grant a directed verdict when "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4). An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. This court applies the same standard when evaluating a motion for judgment notwithstanding the verdict. *Rondy, Inc. v. Goodyear Tire & Rubber Co.*, 9th Dist. No. 21608, 2004-Ohio-835, 2004 WL 344157, at ¶ 5.

{¶ 27} In her final assignment of error, appellant has made no arguments other than those addressed by this court in her first and second assignments of error. As we held above, reasonable minds could differ regarding whether Chambers had instigated the assault that led to his death. Accordingly, appellant's final assignment of error is overruled.

### III

{¶ 28} Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

SLABY, P.J., concurs.

CARR, J., dissents.

CARR, Judge, dissenting.

{¶ 29} I respectfully dissent. There is truly only one issue in this case. Was Richard Chambers in the course and scope of his employment when he was shot and killed on October 30, 1998, at Montrose Ford? Since I believe he was, I must dissent. A workplace assault is evaluated no differently from any other type of workplace injury. Consequently, if Chambers's death was "in the course of, and arising out of" his employment, it is compensable. R.C. 4123.01(C).

{¶ 30} There is no dispute here that the assault was work-related. The question here is whether Chambers, by his own actions, removed himself from the course and scope of his employment. In making this determination, both sides rely on *Indus. Comm. v. Pora* (1919), 100 Ohio St. 218, 125 N.E. 662, and look at whether Chambers was the instigator of the assault. In determining whether Pora was outside the course and scope of his employment, the Supreme

Court looked at whether Pora used force or violence or any threats of violence, or said or did anything to incite an assault. This examination is again no different from the context of any other work-related injury. Ohio courts have consistently held that an employee's injuries are "outside the course and scope of his employment" when they are of his own making or due to his own misconduct. See *Highway Oil Co. v. State ex. rel. Bricker* (1935), 130 Ohio St. 175, 181, 4 O.O. 101, 198 N.E. 276 (employee accidentally shot himself with his own gun that he had brought to work) and *Carrick v. Riser Foods, Inc.* (1996) 115 Ohio App.3d 573, 577, 685 N.E.2d 1261 (employee injured when he shook soft-drink machine).

{¶ 31} There is no evidence here that Chambers's death was of "his own making or misconduct." Harris brought a shotgun to work with the intention of shooting Chambers, and he did. The only argument presented that Chambers "instigated" this deadly assault was his comments at one point early on to Harris to "just shoot" him and then later by saying "He ain't f**king coming back in here."

{¶ 32} In order to find that an employee was not "in the course and scope of his employment" when fatally assaulted at work, there must be evidence that the deceased employee used force or "language which would have a tendency to provoke [a deadly assault]." R.C. 4123.01(C); *Pora*, 100 Ohio St. at 220, 125 N.E. 662. Chambers's statements here would not have the tendency to provoke a deadly assault. Harris was the one who brought a deadly weapon into the workplace with the intention of shooting Chambers. Chambers's words did not remove him from the course and scope of employment. Appellant is entitled to judgment as a matter of law. I would sustain appellant's fourth assignment of error and remand for a directed verdict to be issued in appellant's favor.