[Cite as *State v. Robinson*, 2014-Ohio-2973.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99917

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARVIN C. ROBINSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-564924-B

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** July 3, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Erika B. Cunliffe
          Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Brian R. Radigan
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Marvin Robinson ("Robinson") appeals his convictions and sentence. We find no merit to the appeal and affirm.

{¶2} Robinson and his codefendant, Charles Harris ("Harris"), were charged with two counts of aggravated murder, one count of aggravated robbery, and one count of felonious assault. They were accused of violently beating the victim, Michael Morgan ("Morgan"), to death and stealing his belongings.

{¶3} The case proceeded to a jury trial where Morgan's ex-wife, Jeanette Morgan ("Jeanette"), testified that Morgan was a middle-aged father of three who lived in North Olmsted, Ohio. According to Jeanette, Morgan had difficulty dealing with their recent divorce and had been drinking more alcohol than usual. She had no knowledge that Morgan had also been using crack cocaine.

{¶4} For several months prior to his death, Morgan had been visiting Anthony Fields ("Fields") two to three times per week at Fields's apartment located on W. 83rd Street in Cleveland to smoke crack cocaine. During these visits, Morgan would give Fields cash, Fields would purchase the crack, and the two would smoke it together. They had this arrangement because Morgan had been robbed attempting to buy crack in the past, and Fields had a seller he purchased from regularly.

{¶5} W. 83rd Street is located in a high crime area known for drug activity and prostitution. On the evening of July 16, 2012, Detective William Salupo ("Salupo") was parked on W. 83rd Street conducting surveillance when he observed a white Dodge

Charger turn onto W. 83rd from Detroit Avenue and park on the street. Salupo watched as one man exited the car, crossed the street, and walked toward an apartment building. Less than five minutes later, Salupo observed police vehicles arrive in the area where the Charger was parked. He also observed two men walking away from the scene from the east side of W.83rd Street to the west side of the street and disappear from view.

{¶6} Fields's apartment was located on the second floor of the building and had a balcony overlooking a courtyard. An elderly woman lived in the adjacent apartment and shared the balcony with Fields. On the evening of July 16, 2012, Jason Miller ("Miller"), the elderly woman's son, had come to visit her. Miller was sitting on the balcony shortly after 10:00 p.m. when he observed three men approaching the stairs to the apartment building. He recognized one of the men as Morgan but did not recognize the other two.

{¶7} Miller went inside the apartment to get a soda and when he returned to the balcony about one minute later, he saw Morgan lying lifeless on the sidewalk, and the other two men were kicking and beating him. Miller immediately alerted Fields, who came out on the balcony and also observed the beating. Fields testified that one of the males, later identified as Harris, was tall and skinny and wearing a black shirt. The other male, later identified as Robinson, was more stocky and was wearing a white shirt. Miller and Fields saw Robinson going through Morgan's pockets.

{¶8} Fields ran out to the courtyard in an attempt to help Morgan, but Harris chased him away threatening to beat him as well. Fields called 911 to report the beating and possible murder of his friend. Detective John Graves ("Graves") and his partner

Detective Roland Mitchell ("Mitchell"), who were stationed on W. 81st Street and Detroit, heard a broadcast of two males beating a man to death at an address on W. 83rd Street and responded to the scene. When they arrived, Graves observed two men leaving the courtyard and walking southbound on W. 83rd Street. Witnesses informed the officers that the two men leaving the scene were the men responsible for the attack.

{¶9} Graves turned to follow the two males leaving the scene and observed that they were either walking at a fast pace or running. Graves notified other police units in the area to apprehend the males while he turned his attention to the victim. Minutes later, other officers arrived at the scene with the two men in custody. Fields and a friend, positively identified the two men as the perpetrators.

{¶10} Officer Graves and a Cleveland paramedic, who transported Morgan to MetroHealth Hospital, testified that it was difficult to determine the extent of Morgan's injuries because he was unconscious with only a small amount of blood oozing from his left ear and on the ground. However, Morgan's blood pressure and unconscious state indicated he sustained significant internal injuries. Shortly after reaching the hospital, it was determined that Morgan was brain dead.

{¶11} Dr. Joseph Felo ("Dr. Felo"), a forensic pathologist with the Cuyahoga County Medical Examiner's Office, performed Morgan's autopsy. Dr. Felo testified that Morgan suffered several nonfatal injuries to his arms, legs, and torso. He also stated that Morgan sustained a skull fracture, approximately five inches long from the right eyebrow to the back of the skull, which was the fatal injury. He explained that this injury could

only have been caused by a single blow to the top of the skull with a blunt object having a flat or rounded surface.

**{¶12}** Dr. Felo further opined that Morgan's skull fracture could not have been caused by a fist, and it could not have been caused by falling to the ground from a standing position. It also could not have been caused by a fall from the balcony because a fall from the balcony would have caused more extensive injuries throughout the entire body. According to Dr. Felo, this injury could have been caused by a heel of a shoe, a bat, or some type of pole. Dr. Felo further explained that Morgan's injuries would not have caused a significant amount of bleeding because there were no open wounds on the body. He determined the death was a homicide caused by a single blow to the head.

**{¶13}** Curtiss Jones ("Jones"), a supervisor in the trace evidence department of the Cuyahoga County Medical Examiner's Office, testified that he examined Robinson and Harris's shoes and clothing for sources of DNA. Jones also examined a metal pole found at the crime scene for bodily fluids or hair samples. However, because he found no hair or bodily fluids on the pole he did not send the pole to the DNA department for further testing.

**{¶14}** A forensic scientist in the DNA department of the Cuyahoga County Medical Examiner's Office testified that she performed DNA testing on several items of clothing and shoes. She found Morgan's DNA in a blood stain on the lip of Harris's shoe. The items failed to reveal any connection between Robinson and Morgan.

**{¶15}** Detective Ignatius Sowa ("Sowa"), a homicide detective with the Cleveland Police Department, testified that as part of his investigation he obtained a search warrant and searched the property Robinson and Harris possessed at the time of their arrests. Among other things, Sowa discovered two $20 bills with Robinson's property. During a search of Morgan's vehicle, Sowa found an ATM receipt that indicated Morgan had withdrawn $40 from a bank in North Olmsted approximately 20 minutes before he was murdered. Morgan's wallet was found near his car and did not contain any money. No money was found anywhere in Morgan's car or on his person.

**{¶16}** At the close of evidence, the trial court granted Robinson's Crim.R. 29 motion for acquittal on Count 1 of the indictment, which alleged aggravated murder with prior calculation and design. The remaining charges were submitted to the jury.

**{¶17}** After several hours of deliberations, the jury informed the court that it was "hung" on three counts, and the defense requested a *Howard*[1] charge. The court declined to give a *Howard* charge but instructed the jury to continue deliberating. The next day, Juror No. 5 asked to be replaced, stating "I feel like I have good points and due to lack of evidence, I cannot make a — find him guilty." In discussing the note, both the state and defense agreed that the juror should not be excused.

**{¶18}** The defense, however, requested a mistrial on grounds that the juror's comments indicated the jury was hung. The court refused to grant a mistrial and gave the

---

[1] In *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 183 (1989), the Ohio Supreme Court set forth the proper instruction the trial court must give a jury that has declared itself deadlocked.

jurors a *Howard* charge. Upon request, the court also gave the jury a written *Howard* charge. After further deliberations, the jury found Robinson not guilty on the remaining aggravated murder charge, but convicted him of murder, aggravated robbery, and felonious assault.

{¶19} At sentencing, the court concluded, over defense objection, that the aggravated robbery and murder charges were not allied offenses. The court sentenced Robinson to 15 years to life for murder and three years for aggravated robbery to be served consecutive to the 15 years on the murder. The court did not sentence Robinson on the felonious assault charge because it merged with the murder charge. Robinson now appeals and raises five assignments of error.

## Evidence of Alleged Murder Weapon

{¶20} In the first assignment of error, Robinson argues the trial court violated his constitutional right to due process when the court allowed the state to introduce evidence of the alleged murder weapon without first demonstrating its evidentiary nexus to the crime. He contends the state should not have been permitted to introduce evidence of the pipe found at the crime scene because there was no physical evidence linking it to the crimes.

{¶21} Robinson did not object to this evidence and therefore forfeited all but plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

{¶22} A criminal defendant's due process right to a fair trial is violated when inadmissible evidence may have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 87-88, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Under Evid.R. 402, only relevant evidence is admissible. Evid.R. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. However, relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 403. Although "all evidence presented by a prosecutor is prejudicial, * * * not all evidence unfairly prejudices a defendant." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107.

{¶23} Because fairness is subjective, the determination as to whether evidence is "unfairly prejudicial" is left to the sound discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000). Accordingly, we review a trial court's decision regarding the admission of evidence for an abuse of discretion. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.

**{¶24}** Robinson contends the probative value of the pipe found at the crime scene is substantially outweighed by unfair prejudice, especially because the state made it the focal point of its case. However, the record shows that the state did not overemphasize the importance of the pipe, and there was evidence that the pipe was not only relevant but highly probative.

**{¶25}** First, the state never mentioned the pipe in its opening statement, and the state never theorized that the pipe was indeed the weapon that struck the fatal blow to Morgan. In both the state's opening statement and closing arguments, the state informed the jury that it was not clear what blunt object actually inflicted the fatal blow. The state merely suggested that the pipe was a possibility.

**{¶26}** Furthermore, the fact that the pipe may have been used as a murder weapon is supported by the record. The pipe was first mentioned on page 464 of the transcript where Detective Graves identifies it as an object found in the grass several feet away from Morgan's body. When asked why Graves thought the pipe was significant, he explained: "Speaking with one of the people we learned some information regarding [sic] possible object that was used."

**{¶27}** Later, Dr. Felo explained that only a single blow with a blunt object could have caused Morgan's fractured skull. It could not have been caused by simply falling from a standing position or falling from a second floor balcony. It also was not caused by multiple blows because, if that were the case, there would have been more cracks in

the skull. Dr. Felo further explained that the injury could have been caused by holding the victim in a headlock and ramming him into a fixed object.

{¶28} Finally, Dr. Felo stated that Morgan's skull fracture could have been caused by the pipe, but the pipe failed to contain any of the victim's hair, skin, or blood. For this reason, Dr. Felo could not identify the pipe as the murder weapon to a reasonable degree of medical certainty. Nevertheless, Dr. Felo could not exclude the pipe as a possible murder weapon and explained that it was unlikely there would be blood on the murder weapon because Morgan's injuries were internal. Dr. Felo also explained that hair falls off an object much more easily than blood. Therefore, based on expert testimony, the pipe remained a possible murder weapon in the case, and the jury was free to determine what weight should be given to the evidence.

{¶29} Evidence of the pipe was relevant, probative, and admissible since it was a possible murder weapon. Under these circumstances, Robinson was not deprived of a fair trial by the court's decision to admit evidence of the pipe, and its admission into evidence was not an abuse of discretion.

{¶30} The first assignment of error is overruled.

### Fair and Impartial Jury

{¶31} In the second assignment of error, Robinson argues he was denied his constitutional right to a fair and impartial jury because (1) the court failed to provide sufficient clarification requested by the jury, (2) the court interfered with the jury's

deliberations, and (3) the court failed to declare a mistrial after the jury twice claimed it could not reach a verdict.

{¶32} At approximately 4:00 p.m. on the jury's second day of deliberations, it sent out a note requesting direction because it was hung on three counts. Rather than give the jury a *Howard* charge, as the defense requested, the court instructed the jury:

> The word "hung" in reference to deliberations is generally used to mean we cannot reach an agreement on three counts. I will assume that's what you mean here.

> First things first. It appears you have reached an agreement on one count. So your deliberations on that count should be undisturbed and are over. As for the three counts, I just want you to know that your situation is not all that unusual. Based on the time that you've been deliberating, I think that a little more effort is in order in this particular case. However, an effort probably shouldn't be made this afternoon. If you have an evening to reflect and rest, you may come in tomorrow morning prepared to have productive discussions.

{¶33} Robinson contends this instruction was improper because the court erroneously advised the jury that it should stop deliberating on the "unhung" count. However, Robinson's trial counsel specifically asked the court to instruct the jury not to revisit the count upon which they had reached a verdict because they believed the jury had reached a not guilty verdict. Thus, any error in providing this instruction is invited error. Pursuant to the invited error doctrine, a party may not take advantage of an error that the party invited or induced. *State v. Bey*, 85 Ohio St.3d 487, 492-493, 709 N.E.2d 484 (1999). Therefore, since Robinson requested the jury instruction of which he now complains, he may not now seek to use the instruction to his advantage on appeal.

**{¶34}** Robinson also argues it was improper for the court to send the jury home to reflect on the case. However, Robinson's trial counsel did not object to this instruction and has therefore forfeited all but plain error. Further, jurors are not prohibited from privately reflecting on the case at home as long as they do not discuss the case with anyone. Robinson fails to demonstrate how he was prejudiced by this innocuous statement.

**{¶35}** Robinson next argues that the trial court failed to properly answer two questions asked by the jury. When "a jury requests further instruction, or clarification of an instruction previously given, a trial court has discretion to determine its response to that request." *State v. Lindsey*, 87 Ohio St.3d 479, 721 N.E.2d 995 (2000). The reviewing court must consider the court's response as a whole and determine whether the charge prejudiced the defendant. *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). Therefore, an appellate court will only find reversible error if the jury instruction has, in effect, misled the jury. *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995).

**{¶36}** In the first question, the jury asked: "If the defendant is thought to be complicit in the felonious assault, which leads to death, then by law, is he complicit to the charge of murder?" The trial court answered the question stating:

> If you find beyond a reasonable doubt on Count 5, felonious assault, that the defendant as either a principal offender or an aider and abettor of a principal offender knowingly caused serious physical harm to Michael Morgan, then you have found one of the elements of Count 4, murder.

However, to conclude your deliberations on Count 4, you then must consider the separate element in Count 4 of whether beyond a reasonable doubt the death was caused as a proximate result of the felonious assault. As already instructed, the defendant is charged on all counts as both principal offender and as a person complicit by having a — I'm sorry, aided or abetted a principal offender.

{¶37} In the second question, the jury asked: "Does aiding and abetting in a robbery constitute aiding and abetting in the murder?" The court answered this question, explaining:

My answer to this question assumes that you are referring to the aggravated murder charge in Count 2.

If you find beyond a reasonable doubt that the defendant aided or abetted a principal offender on Count 3, aggravated robbery, you must still separately find the other elements of Count 2, aggravated murder, beyond a reasonable doubt before finding him guilty of Count 2.

If by this question you are referring to the murder charge in Count 4, then you are instructed that "The commission of, or attempt to commit aggravated robbery is not an element of Count 4."

{¶38} A "yes" or "no" answer would not have provided an adequate response to these questions. Instead, the court rephrased its earlier instructions on the elements of each of the crimes. The court correctly explained that a guilty finding of felonious assault does not automatically indicate the defendant is also guilty of murder. The court explained that to find Robinson guilty of murder, they had to find the additional element of proximate cause.

{¶39} Similarly, the court explained that a guilty finding on the aggravated robbery charge is one element of the aggravated murder charge and that they would still have to find the other elements of aggravated murder to find Robinson guilty of that charge.

Finally, the court correctly stated that aggravated robbery is not an element of murder. Thus, the court's responses were correct statements of the law, and there was nothing unreasonable or misleading about them.

{¶40} Robinson next argues he was deprived of his right to a fair trial because one of the jurors viewed one of the prosecutor's LinkedIn pages. After questioning the juror, both parties indicated they were satisfied that the juror could still be fair and impartial to the case. The state nevertheless suggested the juror be removed in an abundance of caution, but the defense indicated they did not want the juror to be removed. Thus, the defense invited any error caused by the juror's continued participation in the case. *Bey*, 85 Ohio St.3d 487, 492-493, 709 N.E.2d 484. Moreover, there is no evidence to suggest that Robinson was prejudiced by the juror's look at the prosecutor's LinkedIn page.

{¶41} Having determined that the trial court did not interfere with jury deliberations, provided appropriate answers to the jury's questions, and Robinson was not prejudiced by the juror's view of the prosecutor's LinkedIn page, we overrule the second assignment of error.

### Accomplice Instruction

{¶42} In the third assignment of error, Robinson argues his right to due process was violated because the trial court gave the jury an accomplice instruction but failed to require a unanimous finding on alternative theories of a principal offender or an aider and abettor in the jury verdict form.

**{¶43}** Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 36. Thus, due process requires the jurors unanimously agree that the defendant is guilty of the offense charged before they can return a guilty verdict. Crim.R. 31(A); *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph three of the syllabus.

**{¶44}** "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree [on] a single way by which an element is satisfied." *Gardner* at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). Applying the federal counterpart of Crim.R. 31(A), the court in *Richardson* explained that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.*

**{¶45}** In *State v. Hinzman*, 8th Dist. Cuyahoga No. 92767, 2010-Ohio-771, this court held that where a defendant is charged with alternative theories of principal offender or aider and abettor, the jury instructions need not require the jury to unanimously agree on one of these alternative theories so long as they unanimously agree beyond a reasonable doubt that the defendant's actions constituted the offense charged. *Id.* at ¶ 33.

**{¶46}** In this case, the court instructed the jury that they had to unanimously find that the state proved all the elements of each offense beyond a reasonable doubt in order

to return a guilty verdict on a particular charge. Because a rational trier of fact could have found Robinson guilty of murder, aggravated robbery, and felonious assault as either the principal offender or an aider and abettor, unanimous agreement on one of these alternatives in the verdict form was not required.

{¶47} The third assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶48} In the fourth assignment of error, Robinson argues he was denied his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to request a specific unanimity instruction on accomplice liability in the verdict forms. He also contends his trial counsel was ineffective for failing to object to the admission into evidence of the pipe found at the crime.

{¶49} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶50} As previously explained in the first assignment of error, the pipe found at the crime scene was admissible into evidence. We have also determined that a specific unanimity instruction on accomplice liability was not required. Therefore, counsel's

failure to object to the admission of the pipe and the verdict forms did not constitute deficient performance or the ineffective assistance of counsel.

{¶51} The fourth assignment of error is overruled.

## Allied Offenses

{¶52} In his fifth and final assignment of error, Robinson argues the trial court violated his right to be free from double jeopardy when it decided not to merge the aggravated robbery conviction with the murder and felonious assault convictions. He contends that aggravated robbery and murder share the same element of serious physical harm and share a common animus.

{¶53} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. Under R.C. 2941.25, a trial court may convict a defendant of two or more offenses arising from the same criminal conduct or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51. Unless committed separately or with a separate animus, allied offenses must be merged for purposes of sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus.

**{¶54}** In *Johnson*, the Ohio Supreme Court held that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson* at syllabus. Under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct. If the offenses correspond to such a degree that the conduct of the defendant can constitute the commission of both of the offenses, then the offenses are of similar import. *Id.* at ¶ 48.

**{¶55}** If the offenses are of similar import, the court must then determine if they were in fact committed by the same conduct — a single act, committed with a single state of mind. *Id.* at ¶ 49. Conversely, if the commission of one offense could not result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id.*

**{¶56}** In this case, Morgan was severely beaten and then robbed. Several courts, including this court, have held that, "where the force used to effectuate an aggravated robbery is far in excess of that required to complete the robbery, or where the circumstances suggest that a separate intent to kill existed, the offenses of aggravated robbery and murder do not merge." *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 12, citing *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 139; *State v. Diggle*, 3d Dist. Auglaize No. 2-11-19, 2012-Ohio-1583;

*State v. Ruby*, 6th Dist. Sandusky No. S-10-028, 2011-Ohio-4864, ¶ 61, and *State v. Tibbs*, 1st Dist. Hamilton No. C-100378, 2011-Ohio-6716, ¶ 48.

**{¶57}** Dr. Felo testified that Morgan sustained a massive skull fracture that rendered him unconscious and unable to defend himself. Other witnesses testified that Robinson and Harris continued to kick and beat Morgan after he was unresponsive. In addition, Fields can be heard on the recording of the 911 call, that was played at trial, telling the dispatcher he believed Morgan was killed. Thus, it was evident to witnesses that the defendants used excessive force to subdue Morgan. Furthermore, it was not until Morgan was already lifeless on the ground that witnesses observed Robinson go through his pockets, as if the robbery was an afterthought. Under these circumstances, the murder and aggravated robbery offenses were not allied offenses of similar import.

**{¶58}** The fifth assignment of error is overruled.

**{¶59}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MELODY J. STEWART, J., CONCUR