[Cite as *McQueen v. Greulich*, 2014-Ohio-3714.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100544**

## KENNETH D. MCQUEEN

PLAINTIFF-APPELLANT

vs.

## DANIEL GREULICH

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-731745

**BEFORE:** Kilbane, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Gerald R. Walton
2800 Euclid Avenue
Suite 320
Cleveland, Ohio 44115

**ATTORNEY FOR APPELLEE**

Michael F. Farrell
Law Office of Michael F. Farrell
55 Public Square
Suite 775
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Plaintiff-appellant, Kenneth McQueen ("McQueen"), appeals from the jury verdict in favor of defendant-appellee, Daniel Greulich ("Greulich"). For the reasons set forth below, we affirm.

**{¶2}** In June 2010, McQueen filed a personal injury action against Greulich for injuries he sustained while riding his bicycle, which collided with a car driven by Greulich.[1] The accident occurred on October 30, 2006, in front of the Fish Furniture store on Lorain Road in North Olmsted, Ohio. The front of Fish Furniture abuts the sidewalk along Lorain until the parking lot on the east side of the furniture store. The front east-side corner of the store is completely framed in glass. McQueen alleges that Greulich was negligent when he failed to stop his car before exiting over the sidewalk and onto Lorain Road. McQueen, who was proceeding eastbound on his bicycle, only saw Greulich's car seconds before impact and could not avoid colliding with the car.

**{¶3}** The matter proceeded to a jury trial in September 2013, at which the following relevant evidence was adduced.

**{¶4}** McQueen testified that he was riding his bicycle down the sidewalk when Gruelich's car suddenly appeared. It was stopped and blocked the entire sidewalk. He testified the car appeared so quickly that he did not have enough time to apply his brakes, so he collided with Greulich's car. McQueen compared his speed on the bicycle to a jog.

---

[1]This is a refiled action that had originally been filed by McQueen in October 2008 then dismissed without prejudice in July 2009. *See McQueen v. Greulich*, Cuyahoga C.P. No. CV-08-673898.

McQueen agreed that the location of the building in relationship to the driveway was "an obstruction to some extent of vision."

{¶5} McQueen further testified that after the accident Greulich and Father Neil Kookoothe ("Father Kookoothe") exited the car and asked him if he wanted an ambulance. McQueen "felt okay" so they did not call an ambulance. He testified that no part of his body struck the car, only his bicycle. Other than the scrapes on his leg, there were no visible signs of injury, and when he fell off of his bicycle, his head did not hit the ground

{¶6} The three of them left in Greulich's car. Greulich took McQueen to Champion Staffing, a temporary employment agency, where he turned in his work time sheets. Greulich then dropped him off at his place of employment. McQueen did not work that day because his employer advised him to go to the urgent care medical facility across the street. McQueen testified that Greulich gave him another bicycle because his bicycle was totaled.

{¶7} Father Kookoothe testified that he is a priest at Saint Clarence Church in North Olmsted, Ohio. On the day of the accident, Greulich drove Father Kookoothe to Fish Furniture to shop for furniture for the rectory. He testified that Greulich was driving very slowly as they exited Fish Furniture's parking lot. They were on the sidewalk at the apron of the driveway to the parking lot. As he was looking off to the right, he observed McQueen coming at him on his bicycle. He yelled Greulich's name, and then McQueen collided with the front passenger door of Greulich's car. When they

exited the car, McQueen was on the ground. He attempted to assist him up, but McQueen stood up "on his own volition." Father Kookoothe offered several times to take McQueen to the hospital, but McQueen refused.

{¶8} Greulich testified that around 1:30 p.m on October 30, 2006, he drove to Fish Furniture with Father Kookoothe. Father Kookoothe sat in the front passenger seat. As they were exiting the parking lot, Greulich slowed downed approximately ten feet before the sidewalk and looked to his right and left. He testified that he did not observe anyone in the drive or on the sidewalk. He could not see very far to the right because of the front corner of the furniture store, so he moved forward and stopped at the sidewalk and then moved forward, with the front of his car at the edge of Lorain Road.

{¶9} At that point, Father Kookoothe yelled his name as McQueen hit the passenger door of his car. Greulich put his car in park, and he and Father Kookoothe exited the car to find McQueen on the ground. Greulich testified that they asked McQueen if he was okay and if he wanted to go to the hospital. McQueen responded "no" and that he was "fine." Consequently, they did not call the police or an ambulance. Afterwards, Greulich took McQueen's bicycle to a bike shop, where they informed him that McQueen's bicycle is worthless and advised him to throw it away. Greulich also drove McQueen back to Saint Clarence where Father Kookoothe gave McQueen another bicycle. Greulich then took McQueen to the temporary employment agency, dropped McQueen off at his place of employment, and gave McQueen $10 for lunch.

{¶10} At the conclusion of trial, the jury returned a verdict for Greulich.

**{¶11}** McQueen now appeals, raising the following four assignments of error for review, which shall be discussed together where appropriate.

## Assignment of Error One

The trial court erred by inviting error over the objections of the plaintiff by setting forth a jury interrogatory authored by the court that combined an inquiry as to defendant including both negligence and proximate cause in one interrogatory.

## Assignment of Error Two

The trial court erred in giving the jury an instruction regarding negligence of the plaintiff when no testimony or evidence as to the plaintiff's actions constituting such alleged negligence existed in the record.

## Assignment of Error Three

The trial court erred in not giving a clear jury instruction regarding defendant that stated if they found that defendant had not stopped at the edge of the sidewalk that defendant was negligent per se.

## Assignment of Error Four

The trial court erred in that the judgment of the court is an abuse of discretion and contrary to the manifest weight of the evidence.

### Jury Interrogatory

**{¶12}** In the first assignment of error, McQueen argues that the trial court abused its discretion by setting forth a jury interrogatory that combined an inquiry including both negligence and proximate cause.

**{¶13}** "The standard under which we review a trial court's decision whether to submit a proposed interrogatory is abuse of discretion." *Freeman v. Norfolk & W. Ry.*, 69 Ohio St.3d 611, 614, 1994-Ohio-326, 635 N.E.2d 310, citing *Ragone v. Vitali &*

*Beltrami, Jr., Inc.*, 42 Ohio St.2d 161, 327 N.E.2d 645 (1975), paragraph one of the syllabus.

{¶14} In the instant case, the trial court submitted the following interrogatory to the jury: "[w]as the Defendant negligent and was that negligence a proximate cause of any injury to the Plaintiff?" The jury answered "no." McQueen argues this interrogatory confused the jury because it combined the negligence and proximate cause issues into one interrogatory, when these are two separate issues. McQueen claims it is not readily known what the jury intended as its answer to the interrogatory — was Greulich not negligent or was his negligence not the proximate cause of McQueen's injuries?

{¶15} In *Phillips v. Dayton Power & Light Co.*, 111 Ohio App.3d 433, 441, 676 N.E.2d 565 (2d Dist.1996), the court noted that

> great care should be taken to avoid combining issues disjunctively in an interrogatory because a "yes" or "no" answer may be construed as referring to either issue. It is proper, however, to phrase an interrogatory disjunctively in certain cases where there is no risk of a nonresponsive answer. In other words, where a "yes" answer to either question alone is enough to support a verdict based upon it. In a negligence case, for example, an interrogatory may validly ask whether the defendant knew or in the exercise of ordinary care ought to have known of a danger. Such disjunctive wording is proper because a "yes" answer to either question alone is enough to support a verdict finding negligence.

{¶16} Here, we find that the disjunctive phrasing used by the trial court was permissible because the interrogatory's wording was such that a negative response to either of the questions alone would have precluded recovery by McQueen. The result

would still be the same if the trial court had asked the interrogatory differently by separating it into two interrogatories.

{¶17} Therefore, the first assignment of error is overruled.

Jury Instructions

{¶18} In the second and third assignments of error, McQueen challenges the court's jury instructions with respect to the negligence of McQueen and negligence per se. McQueen argues that there was no evidence in the record that he did anything improper. Specifically, Greulich and Kookoothe testified they did not see McQueen or know how fast he was traveling on his bicycle. Therefore, McQueen maintains that the trial court should not have instructed the jury that a bicyclist has a duty to exercise due care to avoid colliding with any vehicle upon the sidewalk, and a bicycle shall not be operated at a speed greater than is reasonable and proper under the then existing conditions. McQueen further argues that the trial court erred in not giving a clear instruction regarding negligence per se because the jury was confused as to why the instruction was given. McQueen claims the instruction should have been clearer to address the fact that Greulich failed to stop at the edge of the sidewalk, not that McQueen was speeding on his bicycle in violation of North Olmsted's speed ordinance.

{¶19} A jury instruction is proper if it correctly states the law and if it applies in light of the evidence adduced in the case. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). The precise language of a jury instruction, however, is within the discretion of the trial court. *Youssef v. Parr, Inc.,* 69 Ohio App.3d 679, 690,

591 N.E.2d 762 (8th Dist.1990), citing *State v. Scott*, 41 Ohio App.3d 313, 535 N.E.2d 379 (8th Dist.1987). Therefore, when reviewing a trial court's jury instructions, the proper standard of review for an appellate court is abuse of discretion. *Harris v. Noveon, Inc.*, 8th Dist. Cuyahoga No. 93122, 2010-Ohio-674, ¶ 20, citing *Chambers v. Admr., Ohio Bur. of Workers' Comp.*, 164 Ohio App.3d 397, 2005-Ohio-6086, 842 N.E.2d 580 (9th Dist.).

{¶20} However, in order to preserve the right to appeal the giving or failure to give an instruction, a party must object to the instruction before the jury begins deliberating. *See* Civ.R. 51(A). In the instant case, McQueen failed to object to the jury instructions that a bicyclist riding upon a sidewalk has a duty to exercise care and what constitutes negligence per se. Moreover, in reviewing the record, McQueen proposed those instructions and collaborated with the court and Greulich in crafting the instruction the trial court gave to the jury. The trial court stated to both parties' attorneys that "after several meetings with my staff attorney along with [my] consultation on various aspects of the jury instructions * * * [w]e have come up with a set of jury instructions[.]"

{¶21} This court has previously held that an agreed upon jury instruction that forms the basis for error on appeal is invited error. *Ratliff v. Mikol*, 8th Dist. Cuyahoga No. 94930, 2011-Ohio-2147, ¶ 15, citing *Patton v. Cleveland*, 95 Ohio App.3d 21, 26, 641 N.E.2d 1126 (8th Dist.1994). *See also State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973. Under the invited error doctrine, a party may not take advantage of an error that the party invited or induced. *Id.* As a result, McQueen may

not now seek to use the instruction to his advantage on appeal since he agreed to the jury instructions of which he now complains.

**{¶22}** Accordingly, the second and third assignments of error are overruled.

<u>Manifest Weight of the Evidence</u>

**{¶23}** In the fourth assignment of error, McQueen argues that the judgment is against the manifest weight of the evidence.

**{¶24}** In civil cases, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Moreover, the credibility of witnesses and resolutions of conflicts in evidence are matters for the trier of facts. *Northpoint Props. v. Charter One Bank*, 8th Dist. Cuyahoga No. 100210, 2014-Ohio-1430, ¶ 50, citing *G.F. Business Equip., Inc. v. Liston*, 7 Ohio App.3d 223, 225-226, 454 N.E.2d 1358 (10th Dist.1982). Therefore, a reviewing court should not reverse a trial court's decision if it merely has a difference of opinion on questions of credibility or the weight of the evidence; rather, a trial court's decision should be overturned only when there is no competent and credible evidence to support that decision. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶25}** Specifically, McQueen argues the judgment is against the manifest weight of the evidence because Greulich's trial testimony is in contradiction to his deposition

testimony that he did not stop at the sidewalk and there was no evidence of any negligence by McQueen. We note that

> [t]he knowledge a trier of fact gains through observing the witnesses and the parties in any proceeding (i.e., observing their demeanor, gestures, and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. *In re Satterwhite*, 2001-Ohio-4137, 2001 WL 1001017, *3 (2001), citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). In this regard, the reviewing court in such proceedings should be guided by the presumption that the trier of fact's findings were indeed correct. *Seasons Coal Co.*, supra. As the Supreme Court of Ohio has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990).

*Edwards v. Bolden*, 8th Dist. Cuyahoga No. 97390, 2012-Ohio-2501, ¶ 32.

{¶26} In the instant case, Greulich testified at trial that he did stop his car at the sidewalk. At his deposition, he was never asked directly if he stopped his car at the sidewalk. He testified that he stopped when he got to Lorain Road and his "car was probably coasting up to the corner." McQueen testified at trial that Greulich's car "moved quickly" and "was right out in front of me before I knew it." He then testified that as he was riding his bicycle down the sidewalk, he observed Greulich's car for the first time stopped on the edge of the sidewalk and the end of the street, blocking the entire sidewalk. While McQueen's argument is based on conflicting evidence to attempt to show the verdict was against the manifest weight of the evidence, the jury observed both McQueen's and Greulich's demeanor and behavior, heard both McQueen's and Greulich's explanation of the accident, and found Greulich's testimony to be more

credible. Accordingly, we find the judgment is not against the manifest weight of the evidence.

**{¶27}** Therefore, the fourth assignment of error is overruled.

**{¶28}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR