[Cite as *Herman v. Norfolk S. Ry., Co.*, 2025-Ohio-1498.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| DREW HERMAN, | CASE NO. 2024-A-0042 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| NORFOLK SOUTHERN<br>RAILWAY COMPANY, | Trial Court No. 2023 CV 00022 |
| Defendant-Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: April 25, 2025
Judgment: Affirmed

*Nicholas D. Thompson* and *Michael T. Rapier*, Casey Jones Law Firm, 323 North Washington Avenue, Suite 200, Minneapolis, MN 55401 (For Plaintiff-Appellant).

*Joseph J. Santoro*, *Christopher D. Glass*, *Richard C. O. Rezie*, and *Phillip T. Kelly*, Gallagher Sharp, LLP, 1215 Superior Avenue, 7th Floor, Cleveland, OH 44114 (For Defendant-Appellee).

ROBERT J. PATTON, P.J.

{¶1} Plaintiff-appellant, Drew Herman, ("Herman"), appeals from the verdict finding in favor of defendant-appellee, Norfolk Southern Railway Company ("Norfolk Southern"), and the decision of the Ashtabula County Court of Common Pleas denying a motion for new trial. For the following reasons, we affirm.

{¶2} Herman argues that the trial court's jury instructions were incomplete and misled the jury regarding Herman's burden of proof on his Federal Employers' Liability Act ("FELA") claim against Norfolk Southern. Specifically, Herman posits that the trial

court's instructions were confusing because the written instructions suggest that Herman's own negligence could mitigate Norfolk Southern's liability under FELA. Herman also argues that the trial court should have clarified that assumption of risk and contributory negligence were different.

{¶3} Upon review of the entire jury charge, we conclude that the jury instructions accurately reflect the appropriate standard under FELA. The jury instructions did not suggest that Herman's negligence could have mitigated Norfolk Southern's liability in any way. It is clear from the instructions that a finding of any negligence, in whole or in part, by Norfolk Southern, would lead to a determination of liability if Herman could establish that Norfolk Southern's negligence caused his injuries. The jury did not consider contributory negligence in this case because the jury concluded that Norfolk Southern was not negligent.

{¶4} As the jury instructions accurately reflect the standard of a FELA claim, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

## Substantive and Procedural Facts

{¶5} On September 21, 2022, Herman filed a complaint in the Cuyahoga County Court of Common Pleas against Norfolk Southern after Herman sustained injuries while working on the railroad as an employee of Norfolk Southern. The complaint alleged Norfolk Southern was negligent and claimed Herman was entitled to relief under FELA, the Federal Safety Appliance Act ("SAA"), and the Federal Locomotive Inspection Act ("LIA"). Norfolk Southern filed its Answer to the Complaint on December 21, 2022.

Case No. 2024-A-0042

{¶6}    The parties jointly requested to transfer the case to the Ashtabula County Court of Common Pleas. The case was transferred on January 5, 2023, and filed on January 17, 2023.

{¶7}    On December 15, 2023, the parties submitted a joint stipulation that neither the LIA nor the SAA apply to this case. The Plaintiff voluntarily dismissed the LIA and SAA claims with prejudice.

{¶8}    After exchanging routine pretrial motions and numerous motions in limine, Norfolk Southern filed its proposed jury instructions and proposed interrogatories on March 4, 2024. While there is no notation on the docket that Herman filed proposed instructions or interrogatories, the trial court stated on the record during the trial that Herman did provide a copy of his proposed instructions to the trial court and that the proposed instructions were different from those submitted by Norfolk Southern. Dkt. 78, T.p. Trial Transcript, p. 661. Because the proposed instructions were not filed in the court below, the proposals are not part of the record on appeal.

**Trial**

{¶9}    The case proceeded to a four-day jury trial on March 12, 2024. As Herman's assignment of error relates solely to jury instructions, a full recitation of the testimony presented is unnecessary. However, the Court provides the following summation of some of the testimony presented to the jury.

{¶10}    At trial, several witnesses offered testimony about the process of replacing railroad ties. According to the testimony, after identifying the ties that needed to be replaced, the laborers would remove the spikes and anchors. The backhoe operator then prepared the new ties. Once the laborers prepared the old tie for removal, the laborers

Case No. 2024-A-0042

would move "in the clear," or "outside the red zone." The red zone is the area within the swing radius of the backhoe. Laborers would move outside the red zone prior to the backhoe operator using or maneuvering the backhoe to remove the old tie and would remain there until the backhoe operator finished. Once finished, the backhoe operator would signal to the laborers that it is safe to reenter the work area or red zone. The laborers then returned to clear out any residual debris from the removal of the tie. Once the debris was cleared out, the laborers would again exit the red zone. Once clear, the backhoe operator would use the mechanical thumb and bucket on the backhoe to pick up the new tie and put it in place on the track. When completed, the backhoe operator would once again signal to the laborers so that they may safely return to the red zone to replace the plate and spikes.

{¶11} Occasionally, during this process, after the backhoe operator placed the new tie, the new tie will be too tight to the rail making it difficult to replace the plate. This was referred to as a hard-up tie. According to the testimony, when a backhoe operator encounters a hard-up tie, the operator would need to "crib the tie" to create space or room for the tie and plate. One method of relieving a hard-up tie required the backhoe operator to remove the tie and dig out the area deeper. Another method involved using the backhoe bucket to put pressure on or push down on the tie to create the space for the plate.

{¶12} At trial, the parties agreed that the operation of a backhoe fell under Norfolk Southern's Railway Worker Protection Manual Rule 818 which requires that machines must maintain 25 feet of separation from other machines, employees or equipment working in the foul of the track. However, machines may work within the 25 feet limit when

Case No. 2024-A-0042

necessary. In order to do so, a job briefing must be held so that "all involved have a clear understanding of the movements to be made."

{¶13} As noted above, Herman was an employee of Norfolk Southern and was working as a trackman in Norfolk Southern's Conneaut Yard in Ashtabula County, Ohio. On October 1, 2019, Herman, RJ Johnston ("RJ"), Tyler Miller ("Miller"), and Gregory Weddle ("Weddle") were working together at Conneaut Yard pulling spikes and replacing ties. Weddle was the backhoe operator. It is undisputed that the group came upon a hard-up tie. Herman testified that he signaled to Weddle to let him know there was a hard-up tie.

{¶14} According to Weddle, upon learning of the hard-up tie, he held a job briefing with the laborers, including Herman, so the workers were aware of the plan to make a minor adjustment on the tie with the backhoe. Weddle testified that he planned to push down on the tie to create space for the plate. According to Weddle, he had previously used this method numerous times, and he considered it to be safe. He further said that the laborers, including Herman, were instructed to stay in the clear.

{¶15} RJ testified for the defense, and stated that Weddle held a job briefing before adjusting the tie and Weddle instructed them to stay in the clear or stay outside the swing radius of the backhoe. RJ said that he was within the 25 feet of the machine, but that he was outside of the foul line. In other words, RJ testified that he was outside the swing radius of the backhoe because he was behind the backhoe. RJ stated that if "Drew was going into the line of fire, he should have notified the operator, and he should not have gone into movement until he had eye contact and the operator took his hands off the control." Dkt. 78, T.p. Trial Transcript, p. 767.

Case No. 2024-A-0042

**{¶16}** Weddle indicated that he did not begin to manipulate the tie until the laborers, including Herman, were in the clear or outside the swing radius of the backhoe. According to Weddle, when he was attempting to adjust the hard-up tie, the thumb of the backhoe caught the turnout side of the rail and the bucket slid down the rail. Weddle testified as soon as the bucket got stuck on the rail, he took his hands off the backhoe's controls. However, after the bucket got stuck on the rail, the bucket slid down the rail, and it knocked into Herman.

**{¶17}** Weddle testified Herman was outside the radius and that he did not see Herman signal to him to enter the radius or see Herman enter the radius. According to Weddle, the workers remain in the clear until the operator acknowledges them and informs the workers that they can return to the area. While Herman alleged that he waved to Weddle to come into the red zone, there is no indication that Weddle acknowledged Herman's wave.

**{¶18}** Herman disputed that a briefing was held prior to Weddle adjusting the tie. Herman testified that he worked closer to the backhoe and that he did not move from the time Weddle began the maneuver until he was struck. Herman said that he was knocked over and his left elbow and forearm landed on the rails. Herman admitted he thought he was standing too close to the backhoe.

**{¶19}** Alan Pagels ("Pagels"), a railroad safety consultant, testified on behalf of Herman. After reviewing documents including statements from Herman and other employees, and photographs, Pagels opined that Norfolk Southern did not comply with Rule 818. He believed that the employees did not know the swing radius of the backhoe. According to Pagels, the employees should be made aware of the radius during the

Case No. 2024-A-0042

briefing. Pagels testified that he did not believe there was any reason to be within 25 feet of the backhoe on the date of Herman's injury. Pagels stated that the backhoe operator did not have sufficient training and that the backhoe operator was responsible for the injuries Herman sustained. However, Pagels also concluded that Norfolk Southern had no duty to warn Herman about the unknown occurrence of the thumb of the backhoe catching the rail.

{¶20}  After the incident, Herman was taken to the Conneaut Medical Center Emergency Room. Jason Dello ("Dello"), a track supervisor for Norfolk Southern, was notified that an employee was injured on the job. Dello went to Conneaut Medical Center and met Herman at the hospital. Herman was diagnosed with an elbow contusion, and he was released to return to work immediately without restrictions. There was no notation or mention that appellant complained of any shoulder discomfort or injury during the visit. Upon returning to Conneaut Yard, Dello took the statements of everyone involved in the incident.

{¶21}  Herman returned to work the following day, October 2, 2019. That morning, Herman, Weddle, and Dello met with Dello's boss, Mr. Kronewitter. The group reviewed the incident and discussed Rule 818. No fault was assigned, and no disciplinary action was taken regarding the incident.

{¶22}  On October 4, 2019, three days after the incident, Herman went to the Ashtabula County Medical Center with complaints of left elbow discomfort. Herman did not complain about shoulder pain. Herman was informed that he had an elbow sprain, was advised to rest, and was told to come back in two weeks. Herman returned to work on October 12, 2019.  Herman did not follow up with any medical provider after two weeks.

Herman continued to work as a trackman with no restrictions until he was eventually furloughed for non-medical reasons on February 25, 2020. RJ testified that he worked with Herman after the incident and that he did not complain about any pain and did his usual job.

{¶23} After being furloughed, and nearly five months after the injury, Herman returned to the doctor to be evaluated again for left elbow pain. He was referred to physical/occupational therapy. He went to two physical therapy sessions.

{¶24} In medical documents, the first mention of shoulder pain by Herman occurred in August 2020, approximately nine months after the incident. Herman received some additional imaging, including an MRI of his left shoulder. The imaging showed a torn labrum, also known as a SLAP lesion, in the shoulder. In other words, the shoulder had a small muscle tear. Herman eventually had surgery to repair the shoulder on November 18, 2020. There was some testimony which suggested that the SLAP lesion was not properly treated. Herman later had surgery on his elbow on May 14, 2021.

{¶25} Despite surgery and therapy, Herman testified he remains in pain and has physical restrictions. Herman also worked several other jobs with varying degrees of physical requirements since he was furloughed by Norfolk Southern. As of the date of the trial, Herman was not treating any of the claimed injuries and had not been to a medical provider to treat the injuries for nearly two years.

{¶26} Dr. Kevin Trangle M.D. ("Dr. Trangle"), a medical consultant who did not treat Herman, testified on Herman's behalf. According to Dr. Trangle, the injuries to Herman's shoulder and elbow were a result of the October 1, 2019 incident at Conneaut Yard. Dr. Trangle stated that when Herman fell onto the tracks on his arm, the force of

the fall traveled up the arm, into the shoulder, and caused the SLAP lesion or labrum tear. Dr. Trangle also said the injury would not heal without additional medical intervention. Dr. Trangle opined the injuries would be limiting to Herman and that Herman could not return to weightlifting or being a trackman for the railroad with the injury. Dr. Trangle further opined that Herman did not receive this injury from weightlifting. According to Dr. Trangle, additional surgeries would be needed to repair the tear, and that without surgery, the tear will get worse over time. Dr. Trangle recommended that Herman refrain from lifting anything heavier than 25 pounds.

{¶27} The defense called Dr. James Brodell ("Dr. Brodell"), an orthopedic surgeon. Dr. Brodell reviewed the medical records in this case and also examined Herman prior to trial on January 10, 2024. According to Dr. Brodell, SLAP lesions are common occurrences. The lesions happen from repetitive use and can be asymptomatic. Dr. Brodell testified that weightlifting is a common cause for SLAP lesions in the shoulder.

{¶28} Dr. Brodell opined that Herman's shoulder complaints were not related to the October 1, 2019 incident at Norfolk Southern. He further said that the elbow injury or resulting carpal tunnel was unrelated to the railroad incident because Herman had several risk factors for developing carpal tunnel. Upon his exam of Herman, Dr. Brodell concluded that neither the lifting restrictions nor future surgical intervention were needed.

**Verdict**

{¶29} On March 15, 2024, the jury found in favor of Norfolk Southern on Herman's FELA claim. Because the jury did not find from a preponderance of the evidence that Norfolk Southern was negligent, the jury did not consider any issues of fact, including causation, contributory negligence, if any, or calculate damages.

Case No. 2024-A-0042

## Motion for New Trial

{¶30}  On March 19, 2024, Herman filed a motion for new trial pursuant to Civ.R. 59. Herman alleged in his motion that the jury's verdict in favor of Norfolk Southern was "not sustained by the weight of the evidence." Herman's motion also alleged that Norfolk Southern's negligence was undisputed and therefore, Herman's injuries were foreseeable. Norfolk Southern filed a brief in opposition to Herman's motion for new trial on April 1, 2024.

{¶31}  The trial court denied the motion on April 3, 2024. Specifically, the trial court concluded that "over the course of four days, Norfolk Southern presented ample, competent, credible evidence that it was not negligent. The trial court also noted in its entry that "Herman did not object to the jury instruction on negligence, and he does not now argue that the jury instruction which was given creates a basis for a new trial."

## Appeal

{¶32}  Appellant timely appeals and raises a single assignment of error for our review: "The trial court erred in providing jury instructions that misstated and incompletely stated the law under the Federal Employer's Liability Act ('FELA')." Specifically, appellant argues that the trial court's instructions misled the jury as to Herman's burden under FELA and that the trial court erred by failing to include an assumption of risk jury instruction. We disagree.

## Jurisdiction

{¶33}  Before turning to Herman's assignment of error, it is necessary to address Norfolk Southern's claim that this Court lacks jurisdiction to hear the appeal. Specifically, Norfolk Southern argues that Herman's notice of appeal has not been properly filed.

{¶34} On May 21, 2024, Norfolk Southern filed a motion to dismiss the appeal pursuant to App.R. 4(B)(2) and App.R. 15(A). Norfolk Southern argued that Herman's appeal was untimely filed. On June 3, 2024, after review of Norfolk Southern's motion and Herman's response, this Court denied the motion to dismiss and found the notice of appeal was timely filed.

{¶35} Norfolk Southern filed an application for reconsideration of that decision and a renewed motion to dismiss on June 12, 2024. In this motion, Norfolk Southern asserted that a valid notice of appeal had not been filed because Herman fax-filed his notice of appeal. This is the same claim Norfolk Southern raises in its Answer Brief.

{¶36} This Court granted Norfolk Southern's application for reconsideration as to the Court's misapplication of App.R. 4(A)(3). However, the Court denied Norfolk Southern's motion because the time-stamp placed on the document by the Ashtabula County Clerk of Courts was inaccurate. Specifically, this Court noted "the date/time stamped [sic] produced by the Clerk's fax machine shall constitute the date/time stamp of the Clerk." Ashtabula County Court of Common Pleas Local Rule 3.1. Therefore, the notice of appeal was deemed filed and time-stamped on May 3, 2024, based on the date and time printed by the fax machine. Again, this Court denied Norfolk Southern's motion and determined that the notice of appeal was timely filed. This Court did not address Norfolk Southern's claim that the filing method employed by Herman was defective.

{¶37} In its Answer Brief, Norfolk Southern relies upon *Louden v. A.O. Smith Corp.*, 2009-Ohio-319, in support of its claim that this Court lacks jurisdiction to hear this appeal. In *Louden,* the Supreme Court of Ohio held, "that unless a local rule of the appellate court, properly approved under Sup.R. 27, expressly permits filing of a notice

Case No. 2024-A-0042

of appeal by electronic means, a party appealing a trial court order must file a paper copy of the notice of appeal with the clerk of the trial court pursuant to App.R. 3." *Id.* at ¶ 32. Notably, *Louden* involved a trial court order, which instructed parties to submit the filings to the appellate court via electronic means, where the appellate court did not expressly permit electronic filing in its local rules. In other words, the Supreme Court of Ohio concluded that a trial court could not dictate the method of filing for the appellate court. *Louden* is distinguishable from this case.

{¶38} Loc.R. 3(A) provides:

> The Clerks of the Courts of Common Pleas of the counties of Ashtabula, Geauga, Lake, Portage, and Trumbull serve as the Clerk of this Court of Appeals in their respective counties. All documents required to be filed in this court shall be filed with the Clerk of the Court of Appeals of the county in which the appeal or original action originated. Documents submitted directly to this court at its headquarters in Warren will not be considered filed, either when mailed or when received.
>
> An e-mail to the clerk of courts shall not be considered a proper motion, brief, or other pleading to this court for filing. If e-mail is an accepted form of delivery to the clerk, any motions, briefs, or other pleading that is e-mailed to the clerk for filing shall be in the form of a separate attachment to that e-mail.

{¶39} This rule, as written, recognizes that the clerks of the individual counties can determine what is an accepted form of delivery for documents submitted for filing.

{¶40} Norfolk Southern focuses on Loc.R. 5, electronic filing, which provides in relevant part: "[f]or purposes of this rule, e-filing refers to the submission of documents from litigants to a clerk of courts' e-filing system in a digitized format pursuant to that clerk of courts' procedures and instructions, and does not include fax filings or e-mail filings." Subsection (A) of Loc.R. 5, further provides: "[t]he clerk of courts of each county within

the jurisdiction of the Eleventh District Court of Appeals is authorized to implement an e-filing system and prepare and maintain operating procedures and instructions for their e-filing system. The clerk of courts' operating procedures and instructions shall determine the days and hours during which the e-filing system is available."

{¶41} This Court hears appeals from five different counties. We recognize that these counties have different electronic filing capabilities. Some counties have extensive electronic filing capabilities, while others may not have a formal e-filing system in place. In the interest of justice, this Court's Local Rules expressly permit electronic filings and afford the local clerks some flexibility in determining what, if any, electronic methods are permissible based on their office's capabilities.

{¶42} Loc.R. 5 pertains to filings submitted to the clerk through the clerk of court's e-filing system. This rule does not prohibit fax or email filings, rather it simply states that that Loc.R. 5 is not applicable to those methods of filing. Further, because Ashtabula County does not currently have an e-filing system, Loc.R. 5 does not apply here. Loc.R. 3 recognizes that email filings may be accepted, *if* email is an accepted form of delivery of the clerk. Fax-filings should be treated similarly. Ashtabula County specifically recognizes fax-filings as a permissible way to file certain pleadings in Ashtabula C.P. Loc.R. 3.1 The Local Rules of this Court recognize and permit fax filings as an acceptable method of filing because it is an accepted form of delivery of the clerk in Ashtabula County.

{¶43} As such, we find that the notice of appeal was appropriately filed with the Ashtabula County Clerk of Courts and that this Court has jurisdiction over this appeal.

Case No. 2024-A-0042

**Waiver**

{¶44}   Another matter necessary to address is Norfolk Southern's claim that Herman has waived any claim as to certain jury instructions.

{¶45}  Civ.R. 51(A) provides:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.
>
> On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶46} There were no objections to verdict forms. However, both parties lodged objections to the jury instructions, all of which were overruled. Herman objected to the presentation of the FELA claim and asked the court to instruct the jury on the proposed instruction provided by Herman. In the alternative, Herman asked to modify the instruction by striking the portion of the instruction following the recitation of the elements of the claim. Herman also sought to strike the entire causation section, and argued the instruction regarding the mitigation of damages should be modified by excluding the remaining test after the first bullet point.

Case No. 2024-A-0042

**{¶47}** In his initial merit brief, Herman seemingly argues that the trial court failed to instruct the jury on negligence per se; specifically, that the court below failed to explain that a violation of the safety rules would constitute negligence. Herman's Brief at 11.[1] However, Herman did not object when reviewing the jury instructions with the trial court, when the jury was instructed, or before the jury retired to deliberate despite an opportunity to do so. Nor did Herman assert this claim in his motion for new trial. We also note, despite Norfolk Southern's concession that appellant raised an objection or requested an instruction on assumption of risk, it is not apparent from the record before us. As such, these claims were not raised in the court below and are therefore waived, but for plain error.

**{¶48}** "A party whose request for jury instructions fails to comply with Civ.R. 51(A) generally waives his right to question the trial court's charge upon appeal. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, paragraph two of syllabus. It is essential that a party file proposed jury instructions with the court, making them part of the record. However, even if no objection is made to a jury instruction when it should have been, an appellate court can still reverse if it finds plain error." *Burk v. Enzo's of Elm Rd., Inc.*, 2000 WL 1734852, *3 (11th Dist. Nov. 17, 2000), citing *State v. Getsy*, 84 Ohio St.3d 180, 196 (1993); *State v. Holley,* 1999 WL 1313667, at *10 (11th Dist. Dec. 17, 1999).

**{¶49}** However, Herman does not argue plain error in his brief. The First Appellate District aptly noted:

> Although the Ohio Supreme Court recognized the possibility
> for plain error in the civil context, the court has made clear that
> the plain-error doctrine is disfavored in civil appeals. *Goldfuss*

---

1. Herman takes an about-face in his Reply Brief, wherein he alleges the mention of negligence per se was to highlight the liberal construction of FELA and that he was not arguing the trial court's failure to provide an instruction on negligence per se.

> *v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997). The Ohio Supreme Court directed that the plain-error doctrine should never be applied to reverse a civil judgment to allow litigation of issues which could easily have been raised before and determined by the trial court. *Id.* Instead, the court cautioned appellate courts to apply the doctrine only in "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121.

*Cable Busters, LLC v. Mosley*, 2020-Ohio-3442, ¶ 6-7 (1st Dist.).

{¶50} The First District held: "[w]here the appellant in a civil case does not properly invoke the plain-error doctrine, it cannot meet its burden on appeal and we will not sua sponte undertake a plain-error analysis on its behalf." *Id*. at ¶ 8, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 19. In this case, neither a request for an instruction on negligence per se on the grounds of a safety rule violation nor a request for an assumption of risk instruction was argued by Herman in the court below. Therefore, the trial court made no findings on Herman's assertions.

{¶51} No exceptional circumstances exist in this case which would require the application of the plain error doctrine "to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss*, 79 Ohio St.3d at 122. Because Herman "failed to sufficiently argue a claim of plain error, [he has] forfeited the right to plain-error review on appeal." *See Cable Busters* at ¶ 9. *See also*, *Chism v. Norfolk & W. Ry. Co.*, 1980 WL 354364, *6 (8th Dist. Jan. 4, 1980).

{¶52} Even if Herman invoked plain error review as to the lack of a jury instruction on negligence per se or the lack of a detailed explanation reciting the differences of

Case No. 2024-A-0042

assumption of risk and contributory negligence, we find that the failure to include the instructions does not rise to plain error.

{¶53} First, Herman alleges in his brief that violations of the safety rules implemented by Norfolk Southern, rules which are required by the Federal Railroad Administration ("FRA"), amount to negligence per se under FELA.

{¶54} The trial court instructed the jury regarding safety rules as follows:

> In determining whether the Defendant was negligent, you may consider the evidence concerning the custom in the industry or safety rules. If you find there were sufficient customs or rules, they may indicate recognition of a hazard or the means to avoid it, which may indicate what may be reasonable in a given situation. However, you may find an industry custom safety rule does not reflect the level of care a reasonably prudent person would take, and the Defendant was negligent although an industry custom [or] safety rule was followed.
>
> Even if you find Defendant violated or failed to enforce a safety rule or did not take customary precautions, such a violation or failure does not require a finding of negligence.
>
> Before you may impose liability on Defendant, you must still find Defendant failed to exercise reasonable care under the circumstances.

Dkt. 79, T.p. Trial Transcript, p. 1150-1151.

{¶55} Herman acquiesced to this instruction regarding the safety rules. At trial, Norfolk Southern sought an additional instruction that the same standard regarding the violations of the safety rules and taking precautions should also apply to Herman. Herman's counsel said that the instruction was proper as written. Dkt. 79, T.p. Trial Transcript, p. 1045, 1047. Herman did not ask for any additional language included that violations of Norfolk Southern's rules were equivalent to negligence per se under FELA.

{¶56} Because Herman failed to seek a negligence per se instruction, it is waived.

Case No. 2024-A-0042

**{¶57}** Further, the jury ultimately found Norfolk Southern was not negligent and thus, the jury did not consider assumption of risk or contributory negligence.

### Jury Instructions

**{¶58}** Before addressing the merits of Herman's assignment of error, we must first address the appropriate standard of review. Herman argues that this Court should undertake a de novo review. Norfolk Southern, on the other hand, states that an abuse of discretion standard of review should apply.

**{¶59}** "A trial court must give jury instructions that correctly and completely state the law. *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219, citing *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583. An inadequate jury instruction that misleads the jury constitutes reversible error. *Id.*" *Groob v. KeyBank*, 2006-Ohio-1189, ¶ 32.

**{¶60}** The Ninth Appellate District has stated:

> "The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 29 N.E.3d 921, 2015–Ohio–229, ¶ 22, citing *Estate of Hall* at ¶ 26. However, a "trial court has discretion to decide to give or refuse a particular jury instruction, and an appellate court will not disturb that decision absent an abuse of discretion." *Clark v. Grant Med. Ctr.,* 10th Dist. Franklin No. 14AP–833, 2015–Ohio–4958, ¶ 50, *citing Columbus Steel Castings Co. v. Alliance Castings Co., LLC*, 10th Dist. Franklin No. 11AP–351, 2011–Ohio–6826, ¶ 15. An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Roberts v. Falls Family Practice, Inc.*, 2016-Ohio-7589, ¶ 16 (9th Dist.).

**{¶61}** This Court, in *Cobb v. Shipman*, 2015-Ohio-2604, ¶ 96 (11th Dist.) announced:

> A jury instruction is proper if it correctly states the law and if it applies in light of the evidence adduced in the case. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, * * * (1991). The precise language of a jury instruction, however, is within the discretion of the trial court. *Youssef v. Parr, Inc.*, 69 Ohio App.3d 679, 690, * * * (8th Dist.1990), citing *State v. Scott*, 41 Ohio App.3d 313, * * * (8th Dist.1987). Therefore, when reviewing a trial court's jury instructions, the proper standard of review for an appellate court is abuse of discretion. *Harris v. Noveon*, Inc., 8th Dist. Cuyahoga No. 93122, 2010-Ohio-674 [2010 WL 669788], ¶ 20, citing *Chambers v. Admr.*, Ohio Bur. of Workers' Comp., 164 Ohio App.3d 397, 2005-Ohio-6086, * * * (9th Dist)." (Parallel citations omitted.) *McQueen v. Greulich*, 8th Dist. Cuyahoga No. 100544, 2014-Ohio-3714, 2014 WL 4244300, ¶ 19.

**{¶62}** Herman asserts in his brief that the trial court failed to provide accurate and complete jury instructions regarding his FELA claims. Because Herman alleges that the instruction is incorrect and misstates the applicable law under FELA, we will review the entire charge de novo to determine whether the instruction correctly states the law.[2] However, as discussed below, when addressing the precise language the trial court used in its instructions, and the refusal to adopt Herman's proposed language, those claims will be reviewed for an abuse of discretion.

## FELA

**{¶63}** In his sole assignment of error, Herman alleges that the jury instructions misled the jury, causing them to determine Norfolk Southern was not negligent. Upon review of the entire charge, we disagree.

---

2. We recognize that Herman also provided certain jury instruction language to the trial court; however, the proposed instructions are not part of the record on appeal. When considering the trial court's denial or refusal to adopt the language proposed by Herman, we would review the trial court's decision for an abuse of discretion if we had the record before us to do so.

**{¶64}** FELA is "a 'broad remedial statute' to assist railroad employees when an employer's negligence causes injury." *Shepard v. Grand Trunk W. R.R. Inc.*, 2010-Ohio-1853, ¶ 11-12 (8th Dist.), quoting *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987). "The FELA is a 'response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.'" *Id.*, quoting *Sinkler v. Missouri Pacific RR. Co.*, 356 U.S. 326, 329 (1958). "The Act is intended to be read liberally in favor of injured railroad employees." *Id.*, citing *Urie v. Thompson*, 337 U.S. 163, 180 (1949).

**{¶65}** State and federal courts have concurrent jurisdiction over FELA claims; however, federal law governs these claims. See, *Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007) citing 45 U.S.C. 56. Therefore, when FELA cases are presented in state court, the state's procedural rules will apply, "but the substantive law governing them is federal." *Taylor v. Norfolk Southern Ry. Co.*, 2020-Ohio-2657, ¶ 9 (6th Dist.), citing *Vance v. Consol. Rail Corp.*, 73 Ohio St.3d 222, 227 (1995).

**{¶66}** "FELA provides, 'Every common carrier by railroad while engaging in commerce * * *, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *.' 45 U.S.C. 51." *Taylor,* at ¶ 7.

**{¶67}** The trial court used this language in the jury instructions. Dkt. 79, Tp. Trial Transcript, p. 1146. Directly thereafter, the trial court appropriately discussed the elements of the FELA claim:

Case No. 2024-A-0042

In order to find Defendant, Norfolk Southern, liable for the Plaintiff under FELA statute, you must find by a preponderance of the evidence that:

The Defendant or one of its employees or agents was negligent;

The Defendant's negligence, if any, was a cause *in whole or in part* of the Plaintiff's injuries.

The Plaintiff must prove each of these elements by a preponderance of the evidence. If you find that the Plaintiff failed to prove each element by a preponderance of the evidence, your verdict must be for the Defendant. Only if you find that the Plaintiff has established each element by a preponderance of the evidence may you consider the question of damages.

(Emphasis added.) Dkt. 79, T.p. Trial Transcript, p. 1146-1147.

**{¶68}** The trial court correctly and completely stated the law under FELA.

**{¶69}** Herman next argues that the jury instructions were confusing as the instructions created the impression that Herman's own negligence could mitigate Norfolk Southern's negligence. Specifically, Herman argues that any mention of contributory negligence, outside of the damages section of the jury instructions, improperly suggested that the jury could consider Herman's contributory negligence when determining liability under FELA.

**{¶70}** Upon review, there was no confusion in the instructions regarding the determination of liability. Any discussion about offsetting any negligence by Norfolk Southern or mention of Herman's own possible negligence was related to the calculation of damages. The jury did not reach the issue of damages, as it determined that Norfolk Southern was not negligent.

Case No. 2024-A-0042

{¶71} Herman next argues that the trial court should have provided an instruction distinguishing contributory negligence from assumption of risk. Appellant posits that "the [trial] court's misleading contributory negligence instruction and but-for causation instruction, coupled with the absence of a clarifying assumption of risk instruction, created further confusion as to the law under the FELA." The only mention of the term "assumption of risk" was raised by Herman's counsel in closing arguments.

{¶72} Because the jury determined Norfolk Southern was not negligent at all, the jury did not consider causation. In other words, the jury did not reach assumption of risk or contributory negligence. Therefore, even if the trial court was required to provide an instruction on assumption of risk, which is not supported by the record in this case, the failure to do so was harmless in this instance as it did not affect Herman's substantial rights. *Seeley v. Rahe*, 16 Ohio St.3d 25, 27 (1985). *See also, Parusel v. Ewry*, 2004-Ohio-404, ¶ 81 (6th Dist.) ("Since both of the instructions of which appellant complains go to apportionment of negligence or damages and the jury returned an interrogatory finding that appellee was not negligent, the jury would never have needed to reach these issues. As a result, any error in instructing on these issues could not have prejudiced appellee. Consequently, any purported error was necessarily harmless.").

{¶73} Upon review of the entire jury charge, the trial court properly instructed the jury. The trial court's instructions appropriately discussed the claim and conveyed that any negligence, "in whole or in part," by Norfolk Southern was sufficient to meet the standard under FELA, provided Herman also showed that the negligence caused the injury. We therefore conclude the instructions, as given by the trial court, did not mislead the jury in a manner affecting Herman's substantial rights.

**{¶74}** As such, Herman's sole assignment of error is without merit.

## Conclusion

**{¶75}** For the reasons set forth above, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-A-0042

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit.  It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE MATT LYNCH,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-A-0042